IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JAKE BARTLETT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:15-cv-577-ECM |
| | ) | |
| SHERIFF JAY JONES, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

Plaintiff Jake Bartlett ("Plaintiff") is a former inmate of the Lee County Detention Center. He filed this action under 42 U.S.C. § 1983, alleging that Sheriff Jay Jones ("Defendant") of the Lee County Detention Center, in Opelika, Alabama, failed to protect him from assault by inmate Timmothy Chambers ("Chambers") on June 23, 2015. Doc. 1.

Defendant filed an answer, special report, supplemental special report, and evidentiary materials addressing Plaintiff's claims for relief. Docs. 9, 12, 20. Upon receipt of Defendant's reports, the court directed Plaintiff to file a response to Defendant's argument that Plaintiff's claims are due to be dismissed because he failed to exhaust his available administrative remedies at the Lee County Detention Center before filing suit, as required by 42 U.S.C. § 1997e(a). Doc. 13. The court also advised Plaintiff to support his response to Defendant's report with sworn affidavits and other evidentiary materials, and

specifically cautioned Plaintiff that "at some time in the future the court may treat Defendant's report and Plaintiff's response as a dispositive motion and response." *Id.* at 2. Plaintiff responded to Defendant's reports and materials. Docs. 11, 16.

The court now will consider Defendant's report that Plaintiff failed to exhaust his administrative remedies as a motion to dismiss, and it will treat the remainder of Defendant's reports as a motion for summary judgment. Doc. 9. Upon consideration of the motions, the responses, and the evidentiary materials filed in support and in opposition to the motions, the court concludes that Defendant's motion to dismiss for failure to exhaust is due to be granted, and, in the event that Plaintiff has exhausted his available administrative remedies, the motion for summary judgment is due to be granted.

## II. MOTION TO DISMISS

 Plaintiff was a prisoner when he filed this lawsuit, and he challenges the conditions of his confinement when he was an inmate at the Lee County Detention Center. Defendant argues that Plaintiff failed to exhaust his administrative remedies before filing suit. Doc. 9 at 6. Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "[A]n exhaustion defense … is not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368,

1374–75 (11th Cir. 2008) (internal quotation marks omitted). Consequently, the court treats Defendant's exhaustion defense as a motion to dismiss.

"Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he word 'exhausted' has a decidedly procedural emphasis … one 'exhausts' processes, not forms of relief, and the statute provides that one must." *Id.* at 739. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The exhaustion requirement is an affirmative defense; it is not a jurisdictional or pleading requirement. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Woodford v. Ngo*, 548 U.S. 81, 101 (2006) ("the PLRA exhaustion requirement is not jurisdictional"); *Bryant*, 530 F.3d 1374–75 & n.10. "[T]he question of exhaustion under the PLRA [is] a 'threshold matter' that [federal courts must] address before considering the merits of the case. *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004). Because exhaustion is mandated by the statute, [a court has] no discretion to waive this requirement. *Alexander v. Hawk*, 159 F.3d 1321, 1325–26 (11th Cir. 1998)."[1] *Myles v. Miami-Dade County Correctional and Rehabilitation Dept.*, 476 F. App'x 364, 366 (11th Cir. 2012).

---

[1] Policy reasons for exhaustion include:

(1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to

Moreover, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S. 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings… . Construing § 1997e(a) to require proper exhaustion … fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." *Id*. at 90–91, 93. The Supreme Court has reasoned that because proper exhaustion of administrative remedies is necessary, an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement … by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him. *Id*. at 83–84.

The only exception to the exhaustion requirement is embedded in the text of § 1997e(a) – that is, the remedy must be "available." In other words, the grievance procedure must be "'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). The Supreme Court has held that a grievance

---

give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."

*Alexander*, 159 F.3d at 1327 (quoting *Kobleur v. Group Hospitalization & Medical Services, Inc.*, 954 F.2d 705 (11th Cir. 1992)).

4

procedure is unavailable when "it operates as a simple dead end." *Id.* Or "it might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Or it is unavailable because "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

The court conducts a two-step inquiry in applying § 1997e(a). *See Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). First, the court considers the parties' versions of the facts, and if they conflict, takes the plaintiff's version as true. *Id.* at 1082. If, based on the plaintiff's version, the claim is unexhausted, the court must dismiss the claim. *See id.* Second, if the case cannot be dismissed based on plaintiff's version and there are factual disputes, "the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* (citations omitted).

It is undisputed that the Lee County Detention Center provides an administrative remedy for inmate complaints in the form of an inmate grievance procedure. Doc. 12–1 at 19. Plaintiff received a copy of the Detention Center's rules on May 1, 2015, before the assault occurred on June 23, 2015. Doc. 9–5 at 2. The grievance procedure allows an inmate to submit grievances to jail personnel with respect to matters occurring during incarceration at the jail. *Id.* The grievance procedure provides in relevant part:

> If you have a grievance, you can report it on an Inmate Request form. Only one signature is allowed on a grievance.
>
> Your grievance will be investigated and answered, in writing, within 72 hours of the time it is received, excluding weekends and holidays. Grievances

are first answered by the appropriate staff at the lowest level in the chain of command.

If you are not satisfied with the first answer to your grievance, you may send a grievance to the next higher command level (attach a copy of the first grievance). You may continue to send it through the chain of command, up to the Sheriff, who will make the final decision.

We will not take any negative action against you because you file a grievance.

*Id.* The Jail Administrator, Corey Welch, testified by affidavit that if the Detention Center runs out of grievance slips, inmates are provided paper on which to write their grievances, and these are treated in the same way as the form grievances. Doc. 20–2 at 3.

Plaintiff filed two Inmate Request Slips on June 28, 2015, relevant to the assault that is the subject of this § 1983 suit. In one, Plaintiff marked the subject "Other" and wrote in the request portion of the slip: "Hey Ms. Butler I need to know what up about pressing charges about that fight me and Tim Chambers got into on 6-23-15 why is it taking so long can you please let me know something today because I do not want to get a nother shift invole in this I do not want yall to get wrote up by the other shift. Please come see me today." Doc. 9–6 at 2. Butler responded, "the investigators will type up a warrant for you to sign. You have up to a year to sign a warrant." *Id.* In the second Inmate Request Slip, Plaintiff marked the subjects "Personal Problem" and "Other," and he wrote in the request portion: "Hey Ms. Butler suppose to put a stayaway order for me aginst Tim Chamber we got a problem and I need to know if she put the stay away order in to books keep us apart can you please let me know if she did or not I need to know for sure. Thanks." Doc. 9–6 at

3. An officer named Devine responded, "Separation Request a[n]notated in computer. Copy of Request placed in File." *Id.* Welch testified by affidavit that Plaintiff filed no "grievance form against Sheriff Jay Jones or any other staff members of the Lee County Detention Center … ." Doc. 9–3 at 5.

Plaintiff swears that he "did file a grievance to Jones, but was never responded to, or was a copy returned. There is no way for inmates to make a personal copy to keep where the request is sent out (b/c this would prove how frequently request are never responded to or simply thrown out." Doc. 16 at 6. Plaintiffs states that the forms include no date or time indicating when officers respond to them, so "it is truly impossible for inmates to know what is actually being done about the inmates problem. This is policy per Jay Jones." *Id.* at 5. Plaintiff maintains that "when failure occur it ultimately is the responsibility of the policy maker (Jones) & the enforcer (Welch) to fix & handle these issues." *Id.* Plaintiff adds that he never was given a warrant to sign regarding the assault. *Id.* at 6–7. The court granted Plaintiff an opportunity to respond to Defendant's supplemental report, including evidence that inmates could use non-form sheets of paper for Inmate Request Slips. Docs. 20, 21. Plaintiff did not respond.

Plaintiff's conclusory statement that he never received a grievance form is belied by his admission that he received a response to two grievances. Plaintiff offers no support for his bare assertions that his grievances to Defendant were unanswered. He also does not rebut evidence that he could have used a blank sheet of paper to write a grievance or appeal through the chain of command as instructed in the grievance procedure. Specifically,

despite the availability of a grievance procedure addressing the claim he now presents, and his access to that procedure, Plaintiff did not appeal his grievance "through the chain of command, up to the Sheriff, who will make the final decision." Doc. 12–1 at 19. Plaintiff therefore fails to overcome Defendant's evidence that a grievance system was available to Plaintiff, but he failed to use it. *See Woodford*, 548 U.S. 84-851 (to exhaust administrative remedies, an inmate must comply with all steps prescribed by the jail's grievance system); *see also Maclary v. Carroll*, 142 F. App'x 618, 620 (3rd Cir. 2005) (inmate's unsupported conclusory allegations that he filed grievances which went unanswered and unprocessed were insufficient to overcome defendants' evidence that he failed to exhaust available administrate remedies); *Brewington v. Daniels*, 2012 WL 6005780 at *5 (M.D. Ala. 2012) (inmate's conclusory assertion that he complied with grievance procedures but medical staff failed to timely respond to his initial medical grievance insufficient to overcome defendants' evidence showing that a grievance system was available for plaintiff's claims).

The record before the court, including the undisputed evidentiary materials filed by Defendant, demonstrates that an administrative remedy was available to Plaintiff during his confinement in the Lee County Detention Center. These materials further establish that Plaintiff failed to exhaust the remedy properly prior to filing this federal civil action. It is likewise clear that Plaintiff is no longer at the detention facility, and his access to the grievance procedure has ceased; thus, the administrative remedy provided by Defendant is no longer available to Plaintiff. Under these circumstances, dismissal with prejudice is appropriate. *Bryant*, 530 F.3d at 1375 n.1; *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th

8

Cir. 2005); *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) ("Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies."); *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004) (footnotes omitted) (inmate's "federal lawsuits … properly dismissed with prejudice" where previously available administrative remedies had become unavailable).

## III. MOTION FOR SUMMARY JUDGMENT

Even assuming that Plaintiff exhausted his available administrative remedies before filing suit, Defendant is entitled to judgment as a matter of law. Plaintiff claims that Defendant was deliberately indifferent to his safety when he failed to protect Plaintiff from assault by inmate Chambers on June 23, 2015. Doc. 1 at 5–6. Plaintiff seeks only money damages. *Id.* at 4. Defendant argues that Plaintiff cannot establish a failure to protect claim and that Defendant is entitled to qualified immunity on Plaintiff's claim against him in his individual capacity for monetary damages.[2] Doc. 9 at 9–16.

### A. Standard of Review

---

[2] Defendants also contends that he, "in his official capacity, is entitled to absolute immunity from the Plaintiff's claims pursuant to the Eleventh Amendment to the United States Constitution[.]" Doc. 9 at 17. The Eleventh Amendment bars suits for money damages against a state by the citizens of that state unless the state waives its Eleventh Amendment immunity or Congress abrogates said immunity, and neither occurred here. *See Melton v. Abston*, 841 F.3d 1207, 1233–34 (11th Cir. 2016). Moreover, Eleventh Amendment immunity extends to state officials sued in their official capacities when the "individual may 'be treated as an arm of the State partaking of the Eleventh Amendment Immunity.'" *Id.* at 1233 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). Under Alabama law, "a sheriff is a member of the executive branch." *Id.* at 1234 (citing Art. V, § 112, Ala. Const. (1901)). Thus, to the extent Plaintiff sues Defendant in his official capacity for money damages, he is entitled to Eleventh Amendment immunity. *Id.*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted; "issue" altered to "dispute" to reflect the stylistic change in the current rule). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24.

Defendant has met his evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings that a genuine dispute material to the case exists. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other

materials], the court may … grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it … ."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (court considers facts pled in a plaintiff's sworn complaint when considering his opposition to summary judgment"). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable … or is not significantly probative … summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice … ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, and what is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts… . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, [plaintiff's] sworn statements are self-

serving, but that alone does not permit us to disregard them at the summary judgment stage. … '[c]ourts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'") (citation omitted). "Conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact). Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation by the court, a pro se litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. Here, Plaintiff fails to demonstrate a genuine dispute of material so as to preclude summary judgment on his claim against Defendant. *See Matsushita*, 475 U.S. at 587.

## B. Qualified Immunity

Defendant argues that he is entitled to qualified immunity on Plaintiff's claim against him in his individual capacity for damages. Doc. 9 at 10. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional

rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but rather immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (quotation marks and citations omitted). To receive the benefit of qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendant here was acting within the course and scope of his discretionary authority when the incidents complained of occurred. Plaintiff must, therefore, allege facts that, when read in a light most favorable to him, show that Defendant is not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To meet his burden, a plaintiff must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quotation marks and citations omitted). "Clearly established law" means (1) "a materially similar case has already been decided,"

13

(2) "a broader, clearly established principle that should control the novel facts of the situation," or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (quotation marks and citations omitted). The controlling case law is from "the United States Supreme Court, the Eleventh Circuit, or the highest court in the relevant state." *See id.* at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quotation marks and citations omitted). The Court of Appeals for the Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210 (quotation marks and citation omitted). "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). If the plaintiff cannot establish both elements to satisfy his burden, the Defendant is entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 241–42).

## C. Summary of Material Facts

In considering Defendant's motion for summary judgment, the court views the facts in the light most favorable to Plaintiff, the nonmoving party. Plaintiff was booked into the

Lee County Detention Center on criminal charges on September 13, 2013. Doc. 9–1 at 2–3. Defendant Jones was the Sheriff at the Lee County Detention Facility. Doc. 9–2. Captain Corey Welch, who is not named as a defendant, was the Jail Administrator and carried out the day-to-day duties of operating the jail. *Id.* at 2; Doc. 9–3. Lennon Whitlow, who is not named as a defendant, was a Correctional Officer at the jail. Doc. 20–5. Pierce Moore, who is not named as a defendant, was a Correctional Officer at the jail. Doc. 20–6. On June 23, 2015, Plaintiff was an inmate in unit E2 at the Lee County Detention Center, and Chambers was an inmate in unit E1. Doc. 20–7 at 2–3.

According to jail booking policy, if an inmate says another inmate "would do him or her harm, the Booking Deputy will note the potential problem … [and w]henever such a situation occurs, the Shift Supervisor will be notified and the complaining inmate will be housed away from" the problem inmate. Doc. 20–3 at 2. As part of the record, Plaintiff submitted a copy of an Inmate Request Slip dated September 15, 2014, informing the jail that he had a problem with inmate Chambers. Doc. 1-1 at 3; Doc. 9–6 at 4. Plaintiff states it was Sergeant Cowhick who signed his name and wrote "separated" and "9/24/2014" at the bottom of the form.[3] *Id.* Plaintiff states that he never was housed in the same cell as Chambers,

> [b]ut during visitation yard call, or medical call, Inmate Chambers & Bartlett were being out in the halls together often unsupervised or handcuffed. This

---

[3] Welch avers that he showed the form to Sergeant Cowhick, who said his name had been forged. Doc. 20–2 at 3–4. Welch's representation of Cowhick's statement is inadmissible hearsay. *See* Fed. R. Evid. 801(c) (defining hearsay); Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Moreover, the court must view the evidence on the record in the light most favorable to Plaintiff.

> is why Bartlett told Sgt. Cowhick about the threat so that Sgt. Cowhick would make note (and Sgt. Cowhick did) of the situation & keep them separated. (Ex. E; pg.4) which Cowhick <u>ALWAYS</u> did, but ofc. Moore & Ofc. Whitlow ignored. (June 23, 2015) The failure is where some shifts of officers or only a certain few follow procedure (especially when peoples safety is at stake). This failure is an obvious "Trickle down effect" where upper facility Management (Capt. Welch) and (Jay Jones) their subordinates fail to put policies in place that effectively handle & correct problems that allow for Incidences to occur where inmates health & safety are put at risk.

Doc. 16 at 4. Plaintiff avers that his criminal lawyer asked Welch and Defendant about transferring Plaintiff to another facility, but Defendant refused.[4] *Id.* at 2. According to the inmate handbook that Plaintiff received on May 1, 2015, if an inmate feels unsafe, the inmate is instructed to tell the staff, and they "will do what is necessary to protect" the inmate. Doc. 12–1 at 14; Doc. 9–5. Plaintiff maintains that he told Cowhick orally and in writing about the threat. Doc. 16 at 5.

In his verified complaint, Plaintiff states that on June 23, 2015, "staff members of the L.C.D.C. negligently put my life in harms way by allowing my documented enemy Timmothy Chambers to participate in a religious church service at the same time as me. In doing so while returning to my cell block (E-2) I was attacked from behind by my known enemy Timmothy Chambers." Doc. 1 at 5. Plaintiff suffered a cut and black eye, and medical staff treated his injuries with butterfly stitches. *Id.* Plaintiff maintains that he was assaulted because Defendant "operates the L.C.D.C. in such a way that the safety and security of inmates are not taken seriously." *Id.* at 6. Plaintiff says that "cell blocks E-1 and E-2 were allowed to participate in the church service together. Both of those cell blocks

---

[4] Plaintiff does not state when his lawyer made the request to move him. Doc. 16 at 2.

are special management housing units. Instead of allowing each unit a 15 minute church service visit, sheriff Jay Jones via Officer Moore in a rush for time combine both housing units together and as a result the plaintiff was assaulted." *Id.* Doc. 1 at 5. According to Plaintiff's later sworn statement, on the day of the church service he notified Officers Moore and Whitlow "that he was not supposed to be near Chambers," and Moore said, "let us do our job." Doc. 16 at 7. Plaintiff also states that, at the time of the assault, there were more than twenty inmates in the hallway and only two officers. *Id.* Many of the inmates were charged with violent crimes. *Id.* Officers Moore and Whitlow "were nearly 30 yards away from inmates near the cube. The officers weren't even on the hall where the fight was occurring." *Id.* Plaintiff mantains that after the service, he could not have notified officers because they were "out of view of inmates inside the library." *Id.* at 8. Plaintiff adds that he "had already made ofc. Moore aware of the situation. It is unreasonable to think that Bartlett should literally have to notify every officer in the Jail, every time he is moved with a group that he has an issue with certain inmates)." *Id.* Plaintiff avers that Defendant "instilled a culture within the Jail of covering up incidences & fights as well as allowing rules & regulation to be broken without penalty by staff." *Id.* at 9. Plaintiff says that "ultimately it is Mr. Jones' duty to hire/appoint staff who will follow procedure & orders. That failure ultimately falls back on the one who establishes procedure & hires staff who failed to carry out orders & policy … & culpability falls on the one who appoints the staff: Mr. Jay Jones & Capt. Welch." *Id.* at 1.

Plaintiff also submitted a statement sworn under penalty of perjury by inmate Joe Rodriguez, who represents that he was at the church service on June 23, 2015. Doc. 16 at 11. Rodriguez was an inmate on unit E1 on June 23, 2015. Doc. 20–7 at 2. Rodriguez testifies that he overheard Plaintiff tell an officer that he was not supposed to be near Chambers because they had problems, and the officer told Plaintiff there would not be any problems. Doc. 16 at 1. After the service, they started walking back and stopped by the cell block doors because there was no officer to open the doors. According to Rodriguez, he saw Chambers hand his property to someone, then walk up behind Plaintiff, punch him, and start fighting with Plaintiff. *Id.* at 11–12. Rodriguez then saw Whitlow break up the fight. *Id.* at 12.

Officer Moore avers that, typically, inmates in units E1 and E2 who attended church services were escorted only one group at a time. Doc. 20–6 at 3. He states that on the infrequent occasions when officers escorted both cell blocks to services, their protocol was to ask if anyone had a problem or issue with any of the other inmates present. *Id.* On June 23, 2015, Officer Whitlow asked the question of the inmates; none indicated that he had a problem. *Id.* Services typically last fifteen to twenty minutes. During the service, Moore avers, no inmates notified him that they were worried about a particular inmate in attendance. *Id.* After the service, Whitlow told the inmates to form a single file line to be escorted back to their cells. *Id.* Whitlow was at the front of the line. Moore was at the rear. While walking back, Chambers hit Plaintiff. Moore avers that as soon as Whitlow noticed the altercation, Whitlow stopped it. *Id.* Moore helped separate Plaintiff and Chambers.

18

"The altercation lasted a brief moment before Plaintiff" and Chambers were separated. *Id.* Moore states that he was never personally notified in writing or orally that Plaintiff had any issue with Chambers. *Id.* Officer Whitlow makes substantially the same statements in his affidavit regarding the incident. Doc. 20–5.

Defendant avers that he delegated day-to-day duties of operating the jail to Welch. Doc. 9–2 at 2. Defendant swears he was not present or made aware of the altercation between Plaintiff and Chambers, and that his knowledge of it comes from jail records and Defendant's investigation and inquiries into it. *Id.* at 2–3. Defendants states that the jail policy is "that no person will be incarcerated in a situation where his life or health is in danger when he makes that situation known to detention staff and he can be incarcerated elsewhere." *Id.* at 3; Doc. 20–3 at 2.

Welch denies speaking to Plaintiff's attorney about transferring Plaintiff, and Welch states that he was unaware that Plaintiff requested transfer to another facility. Doc. 20–2 at 3. Like Defendant, Welch indicates that the sheriff office's policy is that no person can be incarcerated at the jail "where his life or health may be threatened by another inmate when, by making the situation known to members of Detention Center staff, he can be incarcerated elsewhere." *Id.* Welch states that there is a "keep separate" list of inmates in the Wing Control Area of the Detention Center, and the information is also added "onto a system on the computer." *Id.* Based on his review of the documents, Welch says that on June 23, 2015, Plaintiff did not inform Whitlow and Moore that Plaintiff had problems

with Chambers or ask them to escort Plaintiff to his cell separately after realizing Chambers was at the church service. *Id.* at 4.

### D. Discussion[5]

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotation marks and citations omitted).[6] "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the known risk by failing to take reasonable measures to abate it. *Id.* at 828. "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of … the prison staffs and administrative personnel… . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). The Eleventh Circuit has,

---

[5] Plaintiff complains about his medical treatment. Doc. 16 at 9. Plaintiff did not seek to amend his complaint, and no medical staff is named as a defendant; therefore, the court does not address Plaintiff's assertions regarding his medical treatment.

[6] Because Plaintiff was a pretrial detainee at the time of the alleged constitutional violation, the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment, governs his claim. *Cottone*, 326 F.3d at 1356 n. 4. Nevertheless, "the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments." *Id.* (quoting *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1024 n. 5 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

however, stressed that a "prison custodian is not the guarantor of a prisoner's safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990); *Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga.*, 400 F.3d 1313 (11th Cir. 2005) (same). "Only '[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.'" *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1028–29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

The general law is settled that both objective and subjective elements are necessary components of a violation of the protections afforded by the Eighth Amendment. *Caldwell*, 748 F.3d 1099. With respect to the objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm … exist[ed]. Second, once it is established that the official [was] aware of this substantial risk, the official must [have] react[ed] to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d at 1028–29. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference… . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' … [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837–38. The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety… . It is obduracy and wantonness, not

inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, [providing security for inmates], or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference… . Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal citations and quotation marks omitted). "Merely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id.*; *see also Harris v. Prison Health Servs.*, 706 F. App'x 945, 951–52 (11th Cir. 2017) (recognizing conflicting circuit precedent on deliberate indifference standard, but concluding the controlling standard is "more than mere negligence" not "more than gross negligence") (citing *Melton v. Abston*, 841 F.3d 1207, 1226 n.2 (11th Cir. 2016)). Thus, an official may avoid Eighth Amendment liability for failure to protect an inmate in any one of three ways: (1) demonstrating the official was not aware "of the underlying facts indicating a sufficiently substantial danger" and was "therefore unaware of a danger"; (2) admitting awareness of

"the underlying facts" of a substantial danger, but "believ[ing] (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent"; or (3) showing the official "responded reasonably" to a known substantial danger, "even if the harm ultimately was not averted." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 618 (11th Cir. 2007) (quoting *Farmer*, 511 U.S. at 844) (internal quotation marks omitted).

To the extent that Plaintiff seeks to hold Defendant liable simply because of his supervisory position, supervisory personnel cannot be liable under § 1983 for a constitutional violation by their subordinates via a theory of respondeat superior or on the basis of vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (doctrine of respondeat superior is inapplicable to § 1983 actions); *see also Cottone*, 326 F.3d at 1360. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. To establish the requisite causal connection and avoid entry of summary judgment in favor of a supervisor such as Defendant, Plaintiff must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] the responsible supervisor on notice of the need to correct the alleged deprivation, and he fail[ed] to do so …" or "a supervisor's custom or policy [that] result[ed] in [violation of his] constitutional rights, or … facts [that] support an inference that the supervisor directed the subordinates to act unlawfully, or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).

The court concludes that, on this record, Plaintiff cannot show that Defendant violated Plaintiff's constitutional rights. Even assuming Plaintiff told Moore and Welch that he needed protection from Chambers, and they either ignored Plaintiff, or should have known but failed to keep the inmates separated based on Plaintiff's September 2014 request, nothing in this record suggests that Defendant Jones knew about the conflict between Plaintiff and Chambers or condoned a violation of the policy to protect inmates.[7] The record before the court contains no evidence to support an inference that Defendant directed correctional officials to act unlawfully or knew that they would act unlawfully and failed to stop such action. In addition, Plaintiff identifies only one incident of inmate-on-inmate violence, and one incident is not sufficient to impose liability on a policymaker. *See Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) ("'A single incident would not be so pervasive as to be a custom,' because a custom must be such 'a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it[.]'") (citations omitted) (first alteration in original). Plaintiff presents no evidence of obvious, flagrant, or rampant abuse of a continuing duration in the face of which Defendant failed to take corrective action. Finally, the challenged actions did not occur pursuant to a custom or policy enacted by Defendant. Thus, the required causal connection does not exist between the challenged actions of the officers and Defendant Jones, and liability under the custom or policy standard is not

---

[7] Plaintiff asserts that officers acted negligently. Doc. 16 at 1. Negligence is not a basis for constitutional liability. *See Melton*, 841 F.3d at 1226 n.2.

warranted. Based on the foregoing, Plaintiff fails to meet his burden of demonstrating a constitutional violation. Accordingly, Defendant is entitled to qualified immunity on Plaintiff's claim against him in his individual capacity.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendant's motion to dismiss or, in the alternative, motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of Defendant.

3. This case be DISMISSED with prejudice.

4. The costs of this proceeding be taxed against Plaintiff.

It is further

ORDERED that on or before August 22, 2018, the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a de novo determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal

conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, on this the 8th day of August, 2018.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge